1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

ZION T. GRAE-EL, et al,

11

                    Plaintiffs,

12              v.

13

CITY OF SEATTLE, et al.,

14

                    Defendants.

CASE NO. C21-1678JLR

ORDER ON SEATTLE
CHILDREN'S HOSPITAL,
BRENDA AGUILAR, DR.
HANNAH DEMING, AND DR.
STANFORD HEATH ACKLEY'S
MOTION TO DISMISS

15

## I.    INTRODUCTION

16      Before the court is Defendants Seattle Children's Hospital ("Children's"), Brenda

17  Aguilar, Dr. Hannah Deming, and Dr. Stanford Heath Ackley's (collectively, the

18  "Children's Defendants") motion to dismiss.  (Mot. (Dkt. # 10); Reply (Dkt. # 28).)

19  Plaintiffs Zion T. Grae-El and Caprice Strange oppose the motion.  (*See* Resp. (Dkt.

20  # 16).)  The court has considered the parties' submissions, the relevant portions of the

21  //

22  //

ORDER - 1

record, and the applicable law.  Being fully advised,[1] the Children's Defendants' motion

to dismiss is GRANTED in part, DENIED in part, and DEFERRED in part.

## II.    BACKGROUND

This case arises from a report of suspected child abuse made by Natalie Long, an

employee of Seattle Public Schools ("SPS"), to Child Protective Services ("CPS"), a

component of the Washington State Department of Children, Youth & Families

("DCYF").  (Compl. (Dkt. # 1-1) at 11.[2])  On November 28, 2018, Leslie Meekins, a

teacher at Dunlap Elementary School, became concerned that one of her students—Ms.

Strange's minor child, A.S.[3]—had been the victim of abuse.  (*See id.* at 11, 55.)  Ms.

Meekins, who is required by state law to report instances of suspected abuse, evidently

relayed her concerns to Ms. Long.  (*See id.*)  In turn, Ms. Long "and two other SPS staff"

each questioned A.S. about the suspected abuse in an unrecorded interview on November

28, 2018.  (*Id.* at 11-12, 35.)  During the interview, A.S. allegedly told Ms. Long that he

had been hit in the stomach by his stepfather, Mr. Grae-El, and that he was experiencing

pain in his leg and shin.  (*Id.* at 11.)  Ms. Long and her colleagues also observed marks on

A.S.'s face that they thought "looked like someone grabbed his face really hard," but did

not observe any bruising on A.S.'s stomach.  (*Id.*)  They reported these observations to

Annaliese Ferreria at DCYF, stated that they did not think the Seattle Police Department

---

[1] Plaintiffs have requested oral argument (*see* Resp. at 1), but the court concludes that oral argument would not be helpful to its disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] When citing to the complaint, the court refers to the page numbers contained in the CM/ECF header.

[3] The minor children are referred to using their initials.

("SPD") needed to be contacted at that time, and relayed that A.S. was not expressing a fear of returning home. (*Id.*)

That evening, Ms. Ferreria, along with others from DCYF and SPD, went to Plaintiffs' home to conduct a "safety assessment." (*Id.* at 12.) Plaintiffs' children were not removed from the home at the conclusion of the "safety assessment" but the following morning, November 29, 2018, Ms. Ferreria arrived at Dunlap Elementary and called for SPD officers to place the children in protective custody. (*Id.* at 15.) Plaintiffs allege that, while at the school, Ms. Ferreria conducted a group interview of Plaintiffs' five children,[4] which she did not record because she anticipated that a "far more thorough interview" would subsequently be conducted. (*Id.* at 16.)

Later that evening, the children were transported to Children's where they underwent a lengthy and allegedly distressing examination that lasted into the morning of November 30, 2018. (*Id.* at 25-28.) Plaintiffs were not given an opportunity to be present during any part of the examination. (*Id.* at 28.) The examination was conducted by members of Children's Safe Child and Adolescent Network ("SCAN") team, and was overseen by Dr. Ackley, who "was assisted during his examinations by several residents who were training to be either pediatricians or emergency physicians," including Dr. Deming. (*Id.* at 26.) Ms. Aguilar became involved when SCAN physicians asked her to

//

---

[4] Ms. Strange is the biological mother of A.G., A.S., and Z.A.G. Mr. Grae-El is Z.A.G.'s biological father, and also has two children from a prior relationship, E.A.D. and E.M.D. (*Id.* at 5-7.) Plaintiffs' minor children were originally named as plaintiffs but have been voluntarily dismissed without prejudice from this action. (*See* Pls. MTD (Dkt. # 37) at 2; 1/19/22 Order (Dkt. # 39) at 2.)

1    meet with the children as part of their examination to conduct a "protection assessment."

2    (*See id.* at 27.)

3         Plaintiffs allege that the children were examined as a group and that this format

4    resulted in generalized observations that "did not specify consistently" which of the

5    children made particular statements.  (*Id.* at 26.)  When the examination was complete,

6    the SCAN team determined that all five of the children presented with physical signs or

7    symptoms indicating abuse or neglect, which they indicated on Foster Care Initial Health

8    Screen Forms that were signed by Dr. Deming and submitted to DCYF.  (*Id.* at 26-27,

9    46.)  Although Dr. Deming signed the forms, Plaintiffs allege that Ms. Aguilar, Dr.

10   Ackley, and other unnamed physicians at Children's "allowed" Dr. Deming to do so.  (*Id.*

11   at 27.)  Plaintiffs allege that the SCAN team erroneously determined that markings on the

12   children's bodies were indicative of neglect or abuse, as opposed to "accident, normal

13   childhood activity . . . , legal disciplinary tactics, and normal marking for children of their

14   ages."  (*Id.* at 41.[5])

15        Following the medical examination, DCYF initiated a dependency action against

16   Plaintiffs, removed the children from Plaintiffs' custody, and placed the children in foster

17   care.  (*See id.* at 18, 36-40.)  Additionally, following the SCAN examination, Plaintiffs

18   were arrested, charged, and pled guilty to multiple counts of assault.  (*Id.* at 33.)

19   //

20

21        [5] Plaintiffs quote extensively from reports prepared by expert witnesses in the course of
     their criminal or dependency proceedings, on which they apparently intend to rely in this matter.
     (*See id.* at 40-44.)  The court accepts the factual allegations Plaintiffs have incorporated into their
22   complaint as true but does not consider or comment on the admissibility or sufficiency of
     opinion testimony Plaintiffs may offer at a later date.

1    Plaintiffs now contend that their guilty pleas were "extract[ed]" though "coercion,

2    constitutional violations and malicious prosecution." (*Id.*)

3        Plaintiffs initiated this action in King County Superior Court on or about

4    November 19, 2021 (*see* NOR (Dkt. # 1) ¶ 1).  Defendants the City of Seattle, SPD,

5    Ryoma Nichols, and Daina Boggs removed this matter from King County Superior Court

6    on December 16, 2021.  (*See* NOR at 1.)

7                        **III.    ANALYSIS**

8        Plaintiffs allege that the Children's Defendants breached duties of care in the

9    course of conducting the SCAN examination on November 29 and 30, 2018, and that, as

10    a result of their negligence, they made "false determinations" of abuse that "direct[ly] and

11    proximate[ly]" caused the children to be removed from Plaintiffs' custody.  (Compl. at

12    25, 45-47.)  They allege that Children's is liable for the negligence of its employees and

13    also for its own negligence in failing to adequately supervise its employees and to

14    intervene to stop their "obvious negligence." (*See id.* at 46-47.)  Plaintiffs further allege

15    that, in the course of conducting the SCAN examinations, the Children's Defendants

16    violated their Fourteenth Amendment rights of familial association and conspired with

17    DCYF to violate other, unspecified rights.  (*Id.* at 47.)

18        The Children's Defendants move for dismissal of Plaintiffs' claims pursuant to

19    Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have either failed to

20    plead sufficient facts to sustain their claims or that the alleged violations stem from

21    conduct for which the Children's Defendants have immunity under federal and state law.

22    //

1  (Mot. at 2.)  The Children's Defendants additionally request that the court award them the

2  costs associated with this action.  (*Id.* at 17.)

3        After setting out the legal standard that applies when the court reviews a motion to

4  dismiss, the court turns to consider whether Plaintiffs' claims survive the Children's

5  Defendants' motion, beginning with their federal constitutional claims.

6  **A.      Legal Standard**

7        Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint

8  "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The

9  court construes the complaint in the light most favorable to the nonmoving party, *Livid*

10  *Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and,

11  because Plaintiffs are proceeding *pro se*, does so liberally, *see Resnick v. Hayes*, 213 F.3d

12  443, 447 (9th Cir. 2000).  "To survive a motion to dismiss, a complaint must contain

13  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

14  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

15  550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

16  factual content that allows the court to draw the reasonable inference that the defendant is

17  liable for the misconduct alleged."  *Id.*

18  **B.      Plaintiffs' Constitutional Claims**

19        Plaintiffs proceed under 42 U.S.C. § 1983[6] and allege that the Children's

20  Defendants violated their Fourteenth Amendment rights to familial association, which

21

22        [6] Plaintiffs do not allege that Children's is a governmental actor but seemingly intend to
       allege that the Children's Defendants are subject to 42 U.S.C. § 1983 because they conspired

1   encompasses their right "'to be with their children while they are receiving medical

2   attention,'" and their children's rights to receive "'the love, comfort, and reassurance of

3   their parents while they are undergoing medical procedures, including examinations.'"

4   (Compl. at 47 (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000)).)

5   Plaintiffs also allege that the Children's Defendants engaged in a conspiracy to deprive

6   them of their rights.  (*Id.* at 7.)  The Children's Defendants contend that they are immune

7   from liability under 42 U.S.C. § 1983 (Mot. at 5-7), and also argue that Plaintiffs have

8   failed to state a claim for conspiracy (*id.* at 7-8).  The court first considers whether

9   Plaintiffs have stated a claim for conspiracy before turning to consider whether the

10   Children's Defendants are immune from all liability under 42 U.S.C. § 1983.

11          1.    Conspiracy

12          Plaintiffs allege that the SCAN examinations performed by the Children's

13   Defendants were part of a conspiracy with DCYF to deprive them of their familial

14   association rights by supplying "evidence favorable to or manipulable by DCYF" that

15   would fit "the narrative brought to them by CPS"—that is, that Plaintiffs abused their

16   children.  (*See* Compl. at 28-29.)  Although Plaintiffs do not describe the claim clearly in

17   their complaint, they have elsewhere characterized this claim as one brought pursuant to

18   18 U.S.C. § 241.  (*See* SPS Resp. (Dkt. # 22) at 12 (explaining that the conspiracy claim

19   they assert against SPS and Ms. Long, arises under 18 U.S.C. § 241).)

20

21   with those, like DCYF, who operate under color of state law.  (*See* Compl. at 9 (alleging that
     Children's "is a nonprofit corporation").)  The Children's Defendants "specifically deny that
     they are state actors" subject to 42 U.S.C. § 1983 but do not raise that issue through the instant
22   motion and, instead, "reserve the right to raise [it] in future motions."  (*See* Mot. at 3 n.1.)

1    Section 241 is a criminal statute that makes it unlawful for "two or more persons

2    [to] conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise

3    or enjoyment of any right or privilege secured to him by the Constitution or laws of the

4    United States."  18 U.S.C. § 241.  So construed, Plaintiffs' claim fails because section

5    241 provides no mechanism for a private party, like Plaintiffs, to bring a lawsuit.  *See*

6    *Peabody v. United States*, 394 F.2d 175, 177 (9th Cir. 1968) (affirming dismissal of

7    private lawsuit brought under 18 U.S.C. § 241 because that provision does not create a

8    private right of action); *see also Crain v. Clark Cty. Pub. Def.*, 357 F. App'x 953, 954

9    (9th Cir. 2009).  Accordingly, and to the extent Plaintiffs intended to assert a claim under

10   18 U.S.C. § 241, that claim is DISMISSED with prejudice.

11   Because Plaintiffs are *pro se*, the court also construes their claim as one brought

12   under 42 U.S.C. § 1985, which provides a cause of action that allows private litigants to

13   sue for damages where "two or more persons" have conspired to deprive them of their

14   federal civil rights.  42 U.S.C. § 1985(3).  A claim under section 1985(3) requires that

15   Plaintiffs allege four elements:

16   (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly,
     any person or class of persons of the equal protection of the laws, or of equal

17   privileges and immunities under the laws; and (3) an act in furtherance of the
     conspiracy; (4) whereby a person is either injured in his person or property

18   or deprived of any right or privilege of a citizen of the United States.

19   *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1059 (9th Cir. 2020), *cert.*

20   *granted*, 141 S. Ct. 2720 (2021) (quoting *United Bhd. of Carpenters & Joiners of Am.,*

21   *Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).  To state a claim, Plaintiffs must

22   specifically allege that the deprivation was the product of "racial or class-based animus."

1    *Sharnese v. California*, 547 F. App'x 820, 823 (9th Cir. 2013) (quoting *Usher v. City of*

2    *Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987)).

3        Any potential section 1985 claim fails at the outset, however, because Plaintiffs do

4    not plausibly allege the existence of a conspiracy to deprive Plaintiffs of their rights.

5    Liability for conspiracy requires "the existence of 'an agreement or meeting of the minds

6    to violate constitutional rights.'"  *Mendocino Env't Ctr. v. Mendocino Cty.*, 192 F.3d

7    1283, 1301-02 (9th Cir. 1999) (quoting *United Steelworkers of America v. Phelps Dodge*

8    *Corp.,* 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc)).  "Asking for plausible grounds

9    to infer an agreement does not impose a probability requirement at the pleading stage; it

10   simply calls for enough fact to raise a reasonable expectation that discovery will reveal

11   evidence of illegal agreement."  *Twombly*, 550 U.S. at 556.  The agreement "need not be

12   overt, and may be inferred on the basis of circumstantial evidence such as the actions of

13   the defendants." *Mendocino Env't Ctr.*, 192 F.3d at 1301-02 (citing *Gilbrook v. City of*

14   *Westminster,* 177 F.3d 839, 856 (9th Cir. 1999).  For instance, allegations "that the

15   alleged conspirators have committed acts that 'are unlikely to have been undertaken

16   without an agreement'" can support an inference that a conspiracy was formed.  *Id.*

17   However, facts merely showing the existence of parallel conduct between alleged co-

18   conspirators is not sufficient; Plaintiffs must allege "some setting suggesting the

19   agreement necessary to make out a" claim for conspiracy.  *See Twombly*, 550 U.S. at

20   556-57.

21        Here, Plaintiffs allege that the Children's Defendants "conspired with state agents

22   to bring forth a false determination of abuse and or neglect." (Compl. at 29.)  This sort of

1    "bare assertion of conspiracy" does not suffice.  *See Twombly*, 550 U.S. at 556.  Nor do

2    Plaintiffs' circumstantial allegations support an inference that a conspiracy was formed.

3    *See Mendocino Env't Ctr.*, 192 F.3d at 1301-02.  Although Plaintiffs allege that the

4    SCAN examinations were conducted "in the presence of at least 2 DCYF employees"

5    (Compl. at 26), that is the sort of "parallel conduct allegation" that comes "close to

6    stating a claim, but without further factual enhancement . . . stops short of the line

7    between possibility and plausibility."  *Twombly*, 550 U.S. at 546.  Plaintiffs fail to

8    provide any further factual enhancement and, without it, there is no reason to think that

9    DCYF employees attended the SCAN examinations to initiate or carry out a conspiracy

10   to violate Plaintiffs' rights.  *See Iqbal*, 556 U.S. at 681 (finding allegations "consistent

11   with," but not suggestive of, unlawful conduct insufficient to state a claim "given more

12   likely explanations").

13         Similarly, Plaintiffs do not sufficiently develop their allegations regarding Ms.

14   Aguilar's dual role as both an employee of the State and an agent of Children's.  (*See*

15   Compl. at 10-11, 26.)  For instance, Plaintiffs vaguely allege that Ms. Aguilar "had ties

16   with DCYF" (*id.* at 48) and a "conflict of interest regarding the wellbeing of the children"

17   (*id.* at 26), but neither of those allegations, on their own, suggests the formation of a

18   conspiracy to deprive Plaintiffs of their rights.  *See Twombly*, 550 U.S. at 546

19   (undeveloped allegations of parallel conduct insufficient).  Indeed, any suggestion that

20   Ms. Aguilar was somehow involved in a conspiracy between DCYF and Children's is

21   undermined by Plaintiffs' allegation that she was not able to "pick and choose" the

22   children she examined, which suggests that her participation was more the product of

1    happenstance than a coordinated scheme (*see id.* at 27).  *See Iqbal*, 556 U.S. at 681

2    (finding allegations "consistent with" unlawful conduct insufficient to state a claim

3    "given more likely explanations").

4           Finally, Plaintiffs include no allegations suggesting that the conduct the Children's

5    Defendants allegedly undertook in furtherance of the conspiracy—employing

6    substandard interview tactics; omitting exculpatory information; allowing inexperienced

7    healthcare providers to participate without adequate supervision; and arriving at incorrect

8    findings (*see* Compl. at 26-27)—would not have been undertaken but for an agreement to

9    violate Plaintiffs' civil rights (*see generally id.*).  *See Mendocino Env't Ctr.*, 192 F.3d at

10   1301-02.

11          Accordingly, the Children's Defendants' motion to dismiss Plaintiffs' claim for a

12   conspiracy of Plaintiffs' constitutional rights is GRANTED in part.  Plaintiffs may be

13   able to cure the deficiencies identified above through amendment and so dismissal of this

14   claim shall be without prejudice.  *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir.

15   1995) (instructing courts to permit amendment "unless it determines that the pleading

16   could not possibly be cured by the allegation of other facts" (quotation marks omitted)).

17          2.    <u>Federal Immunity</u>

18          Defendants additionally contend that Plaintiffs' familial association claim, arising

19   under the Fourteenth Amendment, must fail because the Victims of Child Abuse

20   Reauthorization Act of 2018 ("VCARA" or the "Act"), 34 U.S.C. § 20342, provides that:

21          [n]otwithstanding any other provision of law, any individual making a good
            faith report to appropriate authorities of a suspected or known instance of
22          child abuse or neglect, or who otherwise, in good faith, provides information

1    or assistance, including medical evaluations or consultations, in connection
     with a report, investigation, or legal intervention pursuant to a good faith
2    report of child abuse or neglect shall not be subject to civil liability or
     criminal prosecution, under any Federal law, rising from making such report
3    or providing such information or assistance.

4    34 U.S.C. § 20342(1).  The Children's Defendants have not identified any cases applying

5    or interpreting VCARA (*see* Mot. at 6 (observing that "no reported case construes this

6    statute")), and the court is not aware of any such cases.  However, the conduct Plaintiffs

7    allege that the Children's Defendants engaged in—(1) conducting a medical evaluation to

8    determine whether the Plaintiffs' children presented with physical symptoms of abuse or

9    neglect and (2) reporting those findings to DCYF (*see* Compl. at 25-29)—plainly fall

10   within the ambit of VCARA's immunity provision.  *See* 34 U.S.C. § 20342(1).

11        Plaintiffs argue that the Children's Defendants cannot claim immunity under

12   VCARA because "they did not act in good faith" (Resp. at 8) and formed a conspiracy

13   with DCYF to supply favorable evidence that would bolster CPS's theory that Plaintiffs

14   had abused their children.  (*See* Compl. at 28-29.)  As stated above, Plaintiffs have not

15   established the existence of a conspiracy between the Children's Defendants and any of

16   their co-Defendants.  *See supra* at 7-11.  Thus, Plaintiffs are left with their allegations

17   that the Children's Defendants employed substandard interview tactics; omitted

18   information that might have suggested an innocent explanation; allowed the

19   inexperienced healthcare providers to participate without adequate supervision; and

20   arrived at incorrect findings.  (*See id.* at 26-27.)  Such allegations suggests only that the

21   Children's Defendants might have been negligent, which is insufficient to overcome

22   VCARA's presumption that those who report child abuse do so in good faith, *see* 34

ORDER - 12

U.S.C. § 20342(2).  *See Whaley v. State, Dep't of Soc. & Health Servs.*, 956 P.2d 1100, 1106 (1998) (holding that under Washington's comparable immunity statute, RCW 26.44.060, "a traditional negligence standard . . . is not used to determine whether immunity will attach"); *see also United States v. Rigmaiden*, No. CR 08-814-PHX-DGC, 2013 WL 1932800, at *32 (D. Ariz. May 8, 2013) (holding that good faith exception to Fourth Amendment's exclusionary remedy was not overcome where officers were alleged to have acted negligently).

However, even if VCARA applies generally to immunize the type of actions undertaken by the Children's Defendants, a separate question remains of whether it should apply in this case.  VCARA was signed into law on January 7, 2019, *see* Pub. L. 115–424, §3(b), 132 Stat. 5470 (Jan. 7, 2019), which means it was enacted after the Children's Defendants are alleged to have examined Plaintiffs' children on November 29-30, 2018 (*see* Compl. at 25).  Accordingly, before holding that VCARA immunizes the Children's Defendants' conduct, the court must first consider whether doing so would give impermissible retroactive effect to VCARA's immunity provision.  *See Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084-85 (9th Cir. 2001) (citing *Landgraf v. USI Film Productions*, 511 U.S. 244, 265-67 (1994) and noting that "[a]ll things remaining equal, we presume that statutes are not meant to be retroactive.").

The parties have not addressed this issue and the court concludes that further briefing from the parties would be beneficial.  Accordingly, the court DEFERS ruling on Plaintiffs' Fourteenth Amendment claim, as well as its request for an award of costs and reasonable attorney's fees, and DIRECTS Plaintiffs and the Children's Defendants to file

1   concurrent supplemental briefs on the question of whether dismissing that claim on the

2   basis of VCARA's immunity provision, 34 U.S.C. § 20342(1), would give impermissible

3   retroactive effect to that statutory provision.  The parties shall file supplemental briefs of

4   no more than six pages in length by **March 16, 2022 at 12:00 p.m.**  The parties shall not

5   file responses to the supplemental briefs unless ordered to do so by the court.

6   **C.    Medical Negligence and Malpractice Claims**

7           Plaintiffs allege that the Children's Defendants were "medically and

8   professionally negligent for failing to exercise" the requisite "degree of skill, care and

9   learning," and that Dr. Deming and Children's are liable for malpractice and negligence

10  based on Dr. Deming's allegedly false determinations of abuse and neglect.  (Compl. at

11  45.)  Plaintiffs additionally seek to hold Children's and Ms. Aguilar liable for their failure

12  to supervise and prevent "obvious negligence."  (*Id.*)  The Children's Defendants argue

13  that Ms. Aguilar, Dr. Deming, and Dr. Ackley are immune from liability under

14  Washington state law and that Plaintiffs' failure to supervise claim is insufficiently pled.

15  (Mot. at 14.)  The court considers the immunity argument first before turning to consider

16  whether Plaintiffs have alleged sufficient facts to support a claim based on Ms. Aguilar or

17  Children's failure to supervise.

18          1.     Children's Defendants' Immunity from Tort Liability

19          The Children's Defendants argue that Ms. Aguilar, Dr. Deming, and Dr. Ackley

20  are "immune from suit under state law for their involvement in evaluating the minor

21  Plaintiffs for suspected child abuse."  (Mot. at 9.)  RCW 26.44.060 provides immunity

22  from civil liability for those who, among other things, "participat[e] in good faith in the

1   making of a report pursuant to this chapter, . . . or otherwise provid[e] information or

2   assistance, including medical evaluations or consultations, in connection with a report,

3   investigation, or legal intervention pursuant to a good faith report of child abuse or

4   neglect." RCW 26.44.060(1)(a).  This immunity may not be claimed, however, by

5   someone who has been convicted of "knowingly mak[ing] a false report of alleged abuse

6   or neglect" under RCW 9A.20.021.  *See* RCW 26.44.060(1)(b), (4).

7            The Children's Defendants argue that, because Plaintiffs do not allege that any of

8   the Children's Defendants were convicted of falsely reporting child abuse, "their

9   complaint for conduct encompassed wholly by RCW 26.44.060(1)(a) fails to state a

10  viable claim and must be dismissed." (Mot. at 14.)  It is certainly true that immunity

11  would not attach if Plaintiffs plausibly alleged that the Children's Defendants had been

12  convicted of falsely reporting that Plaintiffs' children were abused.  *See* RCW

13  26.44.060(1)(b), (4).  But before considering whether an exception applies to defeat

14  immunity, the court must first consider whether RCW 26.44.060(1) applies as a *prima*

15  *facie* matter.  Here, that requires considering whether Plaintiffs have plausibly alleged

16  that the Children's Defendants did not act in good faith when they examined Plaintiffs'

17  children and reported their findings of abuse to DCYF.  *See* RCW 26.44.060(1).

18           Plaintiffs argue that immunity should not attach because the Children's

19  Defendants' examination was not done in good faith but was rather done in furtherance of

20  a conspiracy to deprive Plaintiffs of their civil rights.  (*See* Compl. at 47-48; Resp. at 8.)

21  As noted above, however, Plaintiffs fail to sufficiently allege the existence of any such

22  conspiracy.  *See supra* at 7-11.  That leaves Plaintiffs with, at most, allegations

1  suggesting that the Children's Defendants were negligent in conducting their examination

2  of the children.  (*See* Compl. at 45-48.)

3         Even if the Children's Defendants were negligent, however, they are still immune

4  from liability under RCW 26.44.060.  Indeed, courts in Washington hold that those who

5  report child abuse to the authorities are immune, even if they failed to "investigate[] or

6  verif[y]" the pertinent facts prior to alleging abuse.  *Yuille v. State Dep't of Soc. & Health*

7  *Servs.*, 45 P.3d 1107, 1111 (Wash. Ct. App. 2002) (citing *Whaley,* 956 P.2d at 1106); *see*

8  *also* Roe *v. Washington*, No. C13-5927BHS, 2014 WL 6611407, at *4 (W.D. Wash. Nov.

9  19, 2014) (immunizing doctor from liability where misdiagnosis was reached "in good

10  faith and without gross negligence"); *Miles v. State, Child Protective Servs. Dep't*, 6 P.3d

11  112, 121 (Wash. Ct. App. 2000) ("Assuming without holding that Dr. Feldman

12  negligently diagnosed [Munchausen's syndrome by proxy], he and Children's are

13  immune from liability as a matter of law.").  "Thus, a traditional negligence standard—

14  based on what the reporter reasonably should have known—is not used to determine

15  whether immunity will attach."  *See Whaley*, 956 P.2d at 1106; *see also Dunning v.*

16  *Pacerelli*, 818 P.2d 34, 38 (Wash. Ct. App. 1991) (holding that those who negligently

17  "report[] child abuse" are nevertheless immune from civil liability under RCW 26.44.060

18  (emphasis omitted)).  Rather, courts are instructed to ask "whether the reporter acted

19  'with a reasonable good faith intent, judged in light of all the circumstances then

20  present.'"  *Id.* (citing *Dunning*, 818 P.2d at 38).

21         Here, Plaintiffs allege that the Children's Defendants were negligent as they

22  conducted the medical examination of the children for purposes of reporting their

1   findings to DCYF.  (*See* Compl. at 45-48.)  Thus, even if the Children's Defendants are

2   liable for the conduct alleged, they are immune under RCW 26.44.060(1)(a).  *See*

3   *Whaley*, 956 P.2d at 1106 (holding that even unverified reports may be immunized

4   because "RCW 26.44.050 imposes the duty of investigation upon the authorities who

5   receive the report, not upon those who make the report").

6        Because Plaintiffs have failed to allege any facts that would defeat the Children's

7   Defendants' claim to immunity under RCW 26.44.060, the Children's Defendants'

8   motion to dismiss Plaintiffs' medical negligence and medical malpractice claims against

9   Ms. Aguilar, Dr. Deming, and Dr. Ackley is GRANTED in part.  Plaintiffs may be able

10  to cure the deficiencies identified above through an amended complaint, however, so

11  dismissal of the medical negligence and medical malpractice claims against Ms. Aguilar,

12  Dr. Deming, and Dr. Ackley shall be without prejudice.  *See Doe*, 58 F.3d at 497.

13        2.    Plaintiffs' *Respondeat Superior* Claim

14        Plaintiffs also allege that Children's is liable because its treatment of the children

15  "fell below the standard of care for a . . . pediatric hospital."  (Compl. at 46.)  Under this

16  sort of *respondeat superior* theory, "an employer is vicariously liable to third parties for

17  its employee's torts committed within the scope of employment."  *Evans v. Tacoma Sch.*

18  *Dist. No. 10*, 380 P.3d 553, 559 (Wash. Ct. App. 2016) (citing *Robel v. Roundup Corp.*,

19  59 P.3d 611 (Wash. 2002)).  The Children's Defendants argue that Plaintiffs' *respondeat*

20  *superior* claim must, accordingly, be dismissed because it is "entirely predicated on the

21  individual conduct of Ms. Aguilar and [Drs. Deming and Ackley]," each of whom is

22  statutorily immune from liability.  (Mot. at 15.)

1    The Children's Defendants rely on the Washington Supreme Court's holding in

2    *Babcock v. State By & Through Dep't of Soc. & Health Servs.*, 768 P.2d 481, 493 (Wash.

3    1989), where the Washington Supreme Court held that "like any principal, the State may

4    take advantage of the defenses of its agent to the extent those defenses are not purely

5    personal to that agent."  However, in its subsequent order denying reconsideration, the

6    Washington Supreme Court reversed, holding that "[p]ersonal immunities granted

7    employees cannot reach the separate actions of their employer," and so "[a]n agent's

8    immunity from civil liability generally does not establish a defense for the principal."

9    *Babcock v. State*, 809 P.2d 143, 156 (Wash. 1991) (citing Restatement (Second) of

10    Agency § 217 (1958)) ("*Babcock II*").

11    Here, the Children's Defendants have argued only that Ms. Aguilar, Dr. Deming,

12    and Dr. Ackley are immune from liability, not that Plaintiffs failed to state sufficient facts

13    to support a claim for negligence.  (*See* Mot. at 9-14.)  Because that immunity defense is

14    personal to Ms. Aguilar, Dr. Deming, and Dr. Ackley, it does not provide a basis for the

15    court to dismiss Plaintiffs' *respondeat superior* claim against Children's, of which those

16    individuals are alleged to be agents (Compl. at 10).  *See Babcock II*, 809 P.2d at 156.

17    Accordingly, the Children's Defendants' motion to dismiss Plaintiffs' *respondeat*

18    *superior* claim is DENIED.

19    3.    Failure to Supervise

20    Finally, Plaintiffs allege that Children's and Ms. Aguilar failed to supervise others

21    at Children's who participated in the SCAN examinations and to guard against the

22    "obvious negligence" of those employees.  (*See* Compl. at 46-47.)  The Children's

1    Defendants argue that Plaintiffs supply only conclusory assertions in support of this claim

2    and that Children's cannot be liable for the conduct of the other Children's Defendants

3    where those individuals are immune from liability.  (Mot. at 15.)  As noted above, the

4    fact that Ms. Aguilar, Dr. Deming, and Dr. Ackley are immunized from liability for their

5    own conduct does not mean Children's cannot be held liable for its alleged failure to

6    supervise the conduct of its employees.  *See Babcock II*, 809 P.2d at 156 (holding that the

7    immunity granted to governmental employees did not extend to their governmental

8    employer in a case where the governmental employer was alleged to have independently

9    injured the plaintiff through its "negligent supervision").

10          However, Plaintiffs' supervisory liability claim nevertheless fails because, in

11   support of the claim, Plaintiffs offer nothing more than "[t]hreadbare recitals of the

12   elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S.

13   at 678.  For instance, Plaintiffs allege that Children's had a duty to monitor its employees

14   and to ensure the competency of its practitioners, it failed to do so and, as a consequence,

15   its employees reported to DCYF that there was evidence of abuse and neglect.  (*See*

16   Compl. at 46.)  Beyond these conclusory assertions, Plaintiffs take issue with the

17   involvement of Dr. Deming, who they criticize as inexperienced but also allege was

18   supervised by an attending physician, Dr. Ackley, "who saw all five children," and was

19   also surrounded by numerous other physicians on the SCAN team.  (*See id.* at 26-27.)

20   Because Plaintiffs make no allegations supporting their theory that those participating in

21   the SCAN examination were unsupervised, or that additional or different supervision

22   would have changed the outcome of the SCAN examination, the Children's Defendants'

motion to dismiss this claim is GRANTED in part. *See Iqbal*, 556 U.S. at 678.

Plaintiffs' failure to supervise claim fails and is DISMISSED without prejudice. *Doe*, 58 F.3d at 497.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS in part, DENIES in part, and DEFERS ruling in part on the Children's Defendants' motion to dismiss (Dkt. # 10).

The court DISMISSES without prejudice (1) Plaintiffs' claims for conspiracy against all Children's Defendants; (2) Plaintiffs' claim for medical negligence and medical malpractice against Ms. Aguilar, Dr. Deming, and Dr. Ackley; and (3) Plaintiffs' claim for failure to supervise against Ms. Aguilar and Children's.  The Children's Defendants' motion to dismiss is DENIED as to Plaintiffs' *respondeat superior* claim.

Additionally, the court DEFERS ruling on Plaintiffs' Fourteenth Amendment claim, as well as its request for an award of costs and reasonable attorney's fees, and DIRECTS Plaintiffs and the Children's Defendants to file concurrent supplemental briefs on the question of whether dismissing Plaintiffs' Fourteenth Amendment claim on the basis of VCARA's immunity provision, 34 U.S.C. § 20342(1), would give impermissible retroactive effect to that statutory provision by **March 16, 2022 at 12:00 p.m.**  The parties' briefs shall be limited to six pages.  The parties shall not respond to the supplemental briefs unless otherwise ordered by the court.

//

//

//

Dated this 1st day of March, 2022.

JAMES L. ROBART
United States District Judge