UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZION T. GRAE-EL, et al.,<br><br>            Plaintiffs,<br>     v.<br><br>CITY OF SEATTLE, et al.,<br><br>            Defendants. | CASE NO. C21-1678JLR<br><br>ORDER ON SEATTLE PUBLIC SCHOOLS AND NATALIE LONG'S MOTION TO DISMISS |

## I.   INTRODUCTION

Before the court is Defendants Seattle Public Schools and Natalie Long's (the "SPS Defendants") motion to dismiss. (Mot. (Dkt. # 15); Reply (Dkt. # 30).) Plaintiff Caprice Strange opposes the motion. (Resp. (Dkt. # 22 (sealed)).) The court has considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS the SPS Defendants' motion.

---

[1] Ms. Strange requests oral argument (Resp. at 1), but the court concludes that oral argument is not necessary. See Local Rule W.D. Wash. LCR7(b)(4).

ORDER - 1

## II.  BACKGROUND

This case arises from a report of suspected child abuse made by Natalie Long, an employee of Seattle Public Schools ("SPS"), to Child Protective Services ("CPS"), a component of the Washington State Department of Children, Youth & Families ("DCYF").  (Compl. (Dkt. # 1-1) at 11.[2])  On November 28, 2018, Leslie Meekins, a teacher at Dunlap Elementary School, became concerned that one of her students—Ms. Strange's minor child, A.S.[3]—had been the victim of abuse.  (*See id.* at 11, 55.)  Ms. Meekins, who is required by state law to report instances of suspected abuse, evidently relayed her concerns to Ms. Long.  (*See id.*)

Ms. Strange alleges that Ms. Meekins was new to Dunlap Elementary, did not have an established relationship with Ms. Strange, Mr. Grae-El, or A.S., who is alleged to be "a special needs child, developmentally, and behaviorally" (*id.* at 63), and that "[v]ery little dialogue had taken place between the family and Ms. Meekins" by November 2018 (*id.* at 30).  Ms. Strange further allege that Dunlap Elementary staff previously had "no concerns" with Plaintiffs' parenting and did not identify any "red flags" based on the

//

//

---

[2] When citing to the complaint, the court refers to the page numbers contained in the CM/ECF header.

[3] The minor children are referred to using their initials.  Ms. Strange is the biological mother of A.G., A.S., and Z.A.G., who is also Plaintiff Zion T. Grae-El's biological son.  (Compl. at 6.)  In addition to Z.A.G., Mr. Grae-El is the biological father of E.A.D. and E.M.D.  (*Id.* at 5-7.)  Plaintiffs Ms. Strange and Mr. Grae-El's (collectively, "Plaintiffs") minor children were originally named as plaintiffs but have been dismissed without prejudice from this action.  (*See* 1/19/22 Order (Dkt. # 39) at 2.)

ORDER - 2

Dunlap staff's prior interactions with Plaintiffs or their prior observations of Plaintiffs' children. (*Id.*)

Based on Ms. Meekins' concerns, Ms. Long "and two other SPS staff" each questioned A.S. on November 28, 2018 about the suspected abuse in an unrecorded interview. (*Id.* at 11-12, 35.) The group that interviewed A.S. did not include Marites Perez-Aniag, a teacher at Dunlap Elementary who allegedly "had the longest and strongest relationship with the family" and had taught A.S. the prior school year. (*Id.* at 30.) During the interview, A.S. allegedly told Ms. Long that he had been hit in the stomach by his stepfather, Mr. Grae-El, and that he was experiencing pain in his leg and shin. (*Id.* at 11.) Ms. Long and her colleagues also observed marks on A.S.'s face that they thought "looked like someone grabbed his face really hard," but did not observe any bruising on A.S.'s stomach. (*Id.*) They reported these observations to Annaliese Ferreria at DCYF, stated that they did not think the Seattle Police Department ("SPD") needed to be contacted at that time, and relayed that A.S. was not expressing a fear of returning home. (*Id.*)

That evening, Ms. Ferreria, others from DCYF, and SPD Officer Ryoma Nichols went to Plaintiffs' home to conduct a "safety assessment." (*Id.* at 12.) The children were not removed from the home following that "safety assessment" but the following morning, November 29, 2018, Ms. Ferreria arrived at Dunlap Elementary and called for SPD officers to place the children in protective custody. (*Id.* at 15.) Ms. Strange alleges that, while at the school, Ms. Ferreria conducted a group interview of Plaintiffs' children,

//

1 | which she did not record because she anticipated that a "far more thorough interview"
2 | would be conducted at a later time. (*Id.* at 16.)

3 |      Subsequently, each of the Plaintiffs' five children were taken to Seattle Children's
4 | Hospital ("Children's") where medical examinations were conducted to assess whether
5 | the children had any physical signs of abuse. (*Id.* at 25-28.) Children's staff identified
6 | what they believed to be signs of abuse and neglect and presented these findings to
7 | DCYF. (*Id.* 46.) The children were then removed from Plaintiffs' custody and either
8 | sent to a foster home in Bellingham, Washington or to live with their other parent. (*See*
9 | *id.* at 17.) A dependency action was initiated against Plaintiffs (*see id.* at 18, 21), who
10 | were also charged with, and pled guilty to, multiple counts of assault (*id.* at 33).
11 | Plaintiffs now contend that their guilty pleas were "extract[ed]" though "coercion,
12 | constitutional violations and malicious prosecution." (*Id.*)

13 |      Plaintiffs initiated this action in King County Superior Court on or about
14 | November 19, 2021 (*see* NOR (Dkt. # 1) ¶ 1; *see* Compl. at 1). Plaintiffs allege that the
15 | SPS Defendants violated rights guaranteed by the Fourth and Fourteenth Amendments to
16 | the United States Constitution by "allowing SPD to interview children without parental
17 | consent in the absence of imminent harm" and by SPS staff "conducting their own
18 | improper interview" of A.S. in violation of SPS policy. (*See* Compl. at 63.) Plaintiffs
19 | further assert a claim for negligence based on these same violations. (*Id.* at 64.) As
20 | relief, they seek damages, as well as an order "requiring ALL SPS staff to undergo
21 | thorough training regarding the handling of child abuse allegations," and declaring that
22 | //

1 | Ms. Long did not follow SPS protocol in reporting the suspected abuse to DCYF. (*See*
2 | Compl. at 65.)

3 |     Although Plaintiffs initially purported to assert these claims on behalf of
4 | themselves and their five minor children *pro se* (*see* Compl. at 6), they have since
5 | dismissed the minor children from this action without prejudice (Pls. MTD (Dkt. # 37) at
6 | 2; 1/19/22 Order). Mr. Grae-El has also dismissed his claims against the SPS Defendants
7 | with prejudice. (*See* Joint Dismissal Stip. (Dkt. # 32); 1/19/22 Order at 2.) Thus, only
8 | Ms. Strange continues to assert claims against the SPS Defendants. (*See* JSR (Dkt. # 45)
9 | at 2.)

10 |     Defendants the City of Seattle, SPD, Officer Nichols, and Daina Boggs (the "City
11 | Defendants") removed this matter from King County Superior Court on December 16,
12 | 2021. (*See* NOR at 1.)

13 | **III.   ANALYSIS**

14 |     The SPS Defendants urge the court to dismiss Ms. Strange's claims based on her
15 | (1) lack of standing to pursue claims on behalf of other Plaintiffs; (2) failure to state a
16 | plausible claim under the Fourth or Fourteenth Amendments or to establish SPS's
17 | liability for violations committed by its employees under 42 U.S.C. § 1983; and
18 | (3) failure to state a claim for negligence. (*See* Mot. at 9, 11, 17, 21.) The court begins
19 | by describing the standard that applies to its consideration of a motion to dismiss brought
20 | under Federal Rule of Civil Procedure 12(b)(6) before turning to consider each of the
21 | SPS Defendants' arguments in favor of dismissal.
22 | //

A.  **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and, because Ms. Strange is proceeding *pro se*, does so liberally, *see Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B.  **Ms. Strange's Standing to Bring Claims on Behalf of Other Plaintiffs**

The SPS Defendants first argue that Ms. Strange's claims should be dismissed because the complaint was signed only by Mr. Grae-El, who purported to represent himself, Ms. Strange, and their children *pro se*. (Mot. at 14 (citing Compl. at 64).) While *pro se* litigants may represent themselves, they may not—as non-lawyers—represent others, regardless of any familial relationships. *See Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself.'" (quoting *C.E. Pope Equity Trust . United States*, 818 F.2d 696, 697 (9th Cir. 1987)). Since the SPS Defendants filed their motion, Ms. Strange filed—at the court's invitation—a praecipe and a corrected, signed version of the complaint. (*See*

1/19/22 Order at 3-4; Praecipe (Dkt. # 42-5).) Plaintiffs have also voluntarily dismissed each of the minor Plaintiffs from this action without prejudice (*see* (Pls. MTD at 2; 1/19/22 Order at 3), and Mr. Grae-El's claims against the SPS Defendants with prejudice (*see* Joint Dismissal Stip.; 1/19/22 Order at 2). Thus, at this point, the claims against the SPS Defendants are brought only by Ms. Strange on her own behalf, which she is permitted to do.

**C.  Ms. Strange's Constitutional Claims**

Ms. Strange proceeds under 42 U.S.C. § 1983 and alleges that the SPS Defendants violated rights guaranteed to her by the Fourth and Fourteenth Amendments to the United States Constitution. (Compl. at 62-63.[4]) Liberally construed, Ms. Strange pleads three constitutional violations, including: (1) a violation of her liberty interest in family association, as secured by the Fourteenth Amendment's due process clause; (2) a violation of her right to be free from invidious race-based discrimination, as secured by the Fourteenth Amendment's equal protection clause; and (3) finally, an unlawful seizure of A.S. during either the November 28 or 29, 2018 interview, in violation of the Fourth Amendment. (*See id.* at 62-63). Defendants contend that Ms. Strange fails to state a constitutional violation under any of these theories. (Mot. at 13.) The court considers each of these possible theories below.

//

---

[4] In her response, Ms. Strange asserts that the "complaint alleges conspiracy" under 18 U.S.C. § 241. (Resp. at 12.) Ms. Strange failed to allege any conspiracy by the SPS Defendants in her complaint (*see* Compl. at 62-64) and 18 U.S.C. § 241 provides no private right of action that Ms. Strange may enforce, *see Peabody v. United States*, 394 F.2d 175, 177 (9th Cir. 1968); *see also Crain v. Clark Cnty. Pub. Def.*, 357 F. App'x 953, 954 (9th Cir. 2009).

1. Fourteenth Amendment Claim – Due Process

The SPS Defendants acknowledge that parents have a liberty interest in their association with and custody of their children, but argue that Ms. Strange has not established such a claim here because she neither "allege[s] that SPS or its agents actually caused a loss of custody of [her] children," nor explains "what custody [she] had" prior to Ms. Long contacting DCYF. (*See* Mot. at 14.)

"The Supreme Court has stated that 'the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court.'" *Keates v. Koile*, 883 F.3d 1228, 1235-36 (9th Cir. 2018) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion)). "[T]he right to familial association" has "both a substantive and a procedural component." *Id.* Thus, "[w]hile the right is a fundamental liberty interest, officials may interfere with the right if they provide the parents with fundamentally fair procedures." *Id.* (citations and quotation marks omitted); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) ("Official conduct that 'shocks the conscience' in depriving parents of [a relationship with their children] is cognizable as a violation of due process.'"); *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1124 (9th Cir. 1989) ("A parent's interest in the custody and care of his or her children is a constitutionally protected liberty interest, such that due process must be afforded prior to a termination of parental status.").

Contrary to the SPS Defendants' contention, the complaint adequately alleges that Ms. Strange was the custodial parent of A.G., A.S., and Z.A.G. (*see* Compl. at 6-7) and thus, has a constitutionally protected interest in "the care, custody, and control of" at least

1 those children, *see Keates*, 883 F.3d at 1235-36.  Establishing that liberty interest is
2 necessary but not sufficient to establishing a constitutional violation, however.  Ms.
3 Strange must also allege that her right to familial association was unlawfully interfered
4 with by the SPS Defendants.  *See id.* at 1236.  She fails to do so.

5         The gravamen of Ms. Strange's familial association claim seems to be that the SPS
6 Defendants failed to follow SPS policy when Ms. Long, as opposed to a different SPS
7 administrator, contacted DCYF to report the suspected abuse of A.S. by Mr. Grae-El,
8 despite having established only "one if not none of the indicators of abuse" set forth in
9 SPS policy.  (Compl. at 62-63; *see* also Resp. at 11 (arguing that the SPS Defendants'
10 negligence has "directly affected [Ms. Strange's] liberty").)  Of course, the indicator of
11 abuse that Ms. Strange alleges the SPS Defendants had before them was A.S.'s statement
12 that Mr. Grae-El "punched him in the stomach."  (Compl. at 11.)

13         However, even accepting that the SPS Defendants failed to follow their own
14 policies when they interviewed A.S. and then reported their concerns of abuse to DCYF,
15 "[m]ere negligence or lack of due care by . . . officials in the conduct of their duties does
16 not trigger the substantive due process protections of the Fourteenth Amendment."
17 *Woodrum*, 866 F.2d at 1126 (dismissing 42 U.S.C. § 1983 claim where officials were
18 alleged to have negligently, and in violation of state law, removed a child from their
19 home); *Stoot v. City of Everett*, 582 F.3d 910, 929 (9th Cir. 2009) (holding "that an
20 official's mere 'fail[ure] to adhere to established guidelines and policies concerning the
21 questioning of child witnesses' does not give rise to an independent claim under § 1983")
22 (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)).

Moreover, Ms. Strange alleges that the SPS Defendants reported their concerns to DCYF, which prompted the agency to conduct a further investigation and, subsequently, to initiate dependency proceedings. She does not allege that the SPS Defendants terminated her parental rights. (*See, e.g.*, Compl. at 34-36; *id.* at 15 (alleging that Ms. Ferreria "arrived at Dunlap and called for SPD to place children in [protective custody]"); *see also id.* at 58 ("DCYF had AS, AG, EMD, EAD, and ZAG removed from the home of their biological parents within 18 hours of initial contact.").) In the Ninth Circuit, being "subjected to an investigation" is not, on its own, "cognizable as a violation of the liberty interest in familial relations." *See Capp v. Cty. of San Diego*, 940 F.3d 1046, 1060 (9th Cir. 2019) (affirming dismissal of Fourteenth Amendment claim where the plaintiff failed to allege that he "actually lost custody of his children as a result of Defendants' alleged misconduct").

Thus, at most, Ms. Strange attempts to allege that Ms. Long and her SPS colleagues negligently—but not in a manner that "shocks the conscience," *Wilkinson*, 610 F.3d at 554—relayed their concerns of child abuse to DCYF, triggering an investigation by DCYF and SPD. (*See* Compl. at 34-36, 62-64.) Those allegations do not support a claim that the SPS Defendants violated Ms. Strange's due process right to familial association. Accordingly, the court GRANTS the SPS Defendants' motion to dismiss Ms. Strange's Fourteenth Amendment due process claim.

    2.    <u>Fourteenth Amendment Claim – Equal Protection</u>

The SPS Defendants also urge the court to dismiss any claim Ms. Strange may have asserted under the Fourteenth Amendment's equal protection clause based on her

failure to allege that Ms. Long, or anyone else at SPS, treated Plaintiffs differently than they would have any other parents suspected of abusing their children.  (Mot. at 16.)

Under the Fourteenth Amendment's equal protection clause, "any official action that treats a person differently on account of his race or ethnic origin is suspect." *See Fisher v. Univ. of Tex.*, --- U.S. ---, 133 S. Ct. 2411, 2419 (2013).  However, Ms. Strange fails to allege in her complaint any facts from which the court might infer that the actions undertaken by Ms. Long, or other SPS employees, were done on account of Ms. Strange's race.  (*See* Compl. at 34-36, 62-64.)  Indeed, in her response brief, Ms. Strange argues that Ms. Long contacted DCYF because she wanted "to protect herself" from liability and "to be on the safe side," not because of any racial animus.  (*See* Resp. at 8.)

Ms. Strange additionally suggests in her response brief that her unequal treatment can be seen by comparing the seriousness with which DCYF took Ms. Long's report of possible abuse to its subsequent disregard of Ms. Strange's report that A.S. and Z.A.G. had been abused while in foster care with Ms. Meekins.  (*See id.* at 6.)  She contends that this shows "bias[ed] treatment and discriminatory actions" by the SPS Defendants, which she argues can only be explained by the fact that Ms. Meekins is white (and thus, given the benefit of the doubt) and Mr. Grae-El is Black (and thus, presumed to be abusive).  (*See id.*)  The court may not consider new theories of liability or new facts raised for the first time in response to a motion to dismiss, however.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving

//

papers, such as a memorandum in opposition to a defendant's motion to dismiss.").[5]

Even if it could, Ms. Strange's theory would still fail to state a claim against SPS or Ms. Long because the discriminating act—choosing to act on Ms. Long's report of abuse but to ignore Ms. Strange's—was allegedly done by DCYF, not SPS or Ms. Long. (*See* Resp. at 6.) If those facts state an equal protection violation, it is against DCYF and not SPS. (*See id.*)

Because the complaint does not allege that Ms. Long or any other SPS employee treated Plaintiffs unequally on account of their race when they interviewed and then reported possible abuse to DCYF, Ms. Strange fails to state an equal protection claim against the SPS Defendants. Therefore, the court GRANTS the SPS Defendants' Fourteenth Amendment equal protection claim.

3.  Fourth Amendment Claim – Unreasonable Seizure

Finally, Ms. Strange alleges that the SPS Defendants committed an unlawful seizure either by: (1) interviewing A.S. on November 28, 2018 "without documented consent of [A.S.] and without [law enforcement] or CPS present," in violation of SPS policy; or (2) by "allowing SPD to interview children without parental consent in the absence of imminent harm." (Compl. at 63.) The SPS Defendants argue that this claim must be dismissed because "parents generally cannot assert that the seizure of their child violated their own Fourth Amendment rights." (Mot. at 16.)

//

---

[5] For the same reason, Ms. Strange has not stated a claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, as she alleges an IDEA violation for the first time in their response brief. (*See* Resp. at 9.)

As this court has recently held, "[t]he Fourth Amendment guarantees a child's right to be secure in their person against unreasonable searches and seizures without a warrant," but that right is "personal and cannot be asserted vicariously." *Zayas v. Dep't of Child., Youth & Fams.*, No. C20-0981JLR-TLF, 2021 WL 5182152, at *9 (W.D. Wash. Aug. 6, 2021) (citing *Mabe v. San Bernadino Cnty.*, 237 F.3d 1101, 1111 (9th Cir. 2001)), *report and recommendation adopted as modified*, No. C20-0981JLR-TLF, 2021 WL 4126624 (W.D. Wash. Sept. 8, 2021). "Accordingly, a parent cannot bring their own claims based on an alleged violation of their child's Fourth Amendment Rights." *Id.*

That is precisely what Ms. Strange attempts to do here. She alleges that the two interviews at Dunlap Elementary on November 28 and 29, 2018 constituted warrantless "seizures" of A.S., but never alleges that she was herself "seized" by the SPS Defendants. (*See* Compl. at 12, 35 ("SPS staff collectively and improperly interviewed [A.S.] on [November 28, 2018]."); *id.* at 63 ("SPS granted SPD access to interview children without parental consent on the grounds of reasonable belief of imminent harm of AS.").) Because Ms. Strange does not allege that she was the subject of a seizure, her Fourth Amendment claim fails. *See Mabe*, 237 F.3d at 1111. Accordingly, the court GRANTS the SPS Defendants' motion to dismiss Ms. Strange's Fourth Amendment unlawful seizure claim.

  4.  SPS's Liability Under <u>*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)</u>

Ms. Strange also attempts to hold SPS liable for the conduct of Ms. Long and other SPS employees. (*See* Compl. at 62-65 (alleging SPS committed various acts and

seeking relief against "SPS staff").) As a general matter, municipal organizations, like SPS, are not vicariously liable for the constitutional violations committed by their employees. *See Monell*, 436 U.S. at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Ms. Strange's claim against SPS necessarily fails here because, as explained above, she has not established that she suffered a cognizable constitutional injury. *See supra* at 8-13. Accordingly, there is no liability to extend to SPS and so the claims against SPS as an instrument of government fail for the same reasons set forth above. *See id.* at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *see also* 42 U.S.C. § 1983 (providing a cause of action for a deprivation of federal rights).[6] Thus, the court GRANTS the SPS Defendants' motion to dismiss with respect to Ms. Strange's constitutional claim against SPS.

## D.     Ms. Strange's Negligence Claim

Ms. Strange also alleges that SPS's failure to comply with its own internal policies amounted to a breach of duties owed to her by SPS employees. (Compl. at 64.) The SPS Defendants argue that Ms. Strange's negligence claim should be dismissed based on: (1) her failure to plead the elements of a negligence action, including the duty that the

---

[6] Because Ms. Strange has not stated a plausible constitutional violation against any SPS employee, the court need not consider whether any statutory or qualified immunity would apply.

SPS Defendants allegedly breached; (2) her failure to allege compliance with the pre-tort suit notice requirement for damages actions against municipal entities; and (3) because Washington law immunizes those who report suspected child abuse in good faith. (Mot. at 26-28.) The court considers each argument in turn.

1. The Elements of Ms. Strange's Negligence Claim

To state a claim for negligence under Washington law, a plaintiff must allege "four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *See Ranger Ins. Co. v. Pierce Cty.*, 192 P.3d 886, 889 (Wash. 2008) (quoting *Degel v. Majestic Mobile Manor, Inc.*, 914 P.2d 728, 552 (Wash. 1996)). "The threshold determination in a claim of negligence is the existence of a duty to the plaintiff, which is a question of law." *Pettis v. State*, 990 P.2d 453, 456-57 (Wash. Ct. App. 1999) (citing *Taylor v. Stevens County*, 759 P.2d 447 (Wash. 1988)). Liberally construed, Ms. Strange endeavors to plead a breach by the SPS Defendants' of their duty to non-negligently investigate child abuse and to report suspected abuse only where "reasonable cause" exists, RCW 26.44.030(1)(a). (*See* Compl. at 62-65.)

Courts have implied a cause of action for the negligent investigation of child abuse that may be asserted by the suspected parents against the Department of Social and Health Services ("DSHS"). *See Pettis*, 990 P.2d at 456-57 (collecting cases); *see also Ducote v. State, Dep't of Soc. & Health Servs.*, 222 P.3d 785, 789 (Wash. 2009).[7] Such

---

[7] This implied cause of action "is limited by RCW 26.44.010 to parents, custodians, guardians, and children" and, thus, does not extend to stepparents. *See Ducote*, 222 P.3d at 789. Accordingly, Ms. Strange may state a claim for negligent investigation, if at all, only with

claims are limited to situations in which the investigation "leads to a harmful placement decision, such as placing a child in an abusive home, removing the child from a nonabusive home, or failing to remove the child from an abusive home." *Biehner v. Dep't of Soc. & Health Servs.*, No. 13-5491RJB, 2014 WL 2154518, at *9 (W.D. Wash. May 22, 2014) (quoting *Roberson v. Perez*, 123 P.3d 844, 850-51 (Wash. 2005)). The Washington State Supreme Court has not decided, however, whether this cause of action may be maintained against mandatory reporting entities other than DSHS, like SPS, which may become involved in investigating or reporting suspected child abuse. *See Roberson*, 123 P.3d at 850 n.10 ("[W]e assume without deciding that the same cause of action may also be maintained against law enforcement."). Even if Ms. Strange may state a claim for negligent investigation against SPS, however, she fails to do so here because she does not allege that Ms. Long, or any other SPS employee, breached a duty of care to non-negligently investigate or report their suspicion of abuse or that, if they did, any harm resulted.

Ms. Strange's allegations of breach focus on the ways in which the SPS Defendants allegedly violated SPS Policy No. 3421, including when Ms. Long, instead of an allegedly more "appropriate school administrator," "made the initial contact with DCYF"; "conducted an interview on 11/28/2018 without documented consent of [A.S.] and without [law enforcement] or CPS present"; and "granted SPD access to interview children without parental consent on the grounds of reasonable belief of imminent harm

---

respect to the investigation of A.G., A.S., and Z.A.G., who she alleges to be her biological children. (*See* Compl. at 5-7.)

of [A.S.]," despite a lack of a concerning history. (*See* Compl. at 62-63.) Ms. Strange also alleges that Ms. Long reported the suspected abuse to DCYF even though A.S. "did not have valid indicators" demonstrating "reasonable cause" to suspect abuse, as required by SPS Policy No. 3421 and RCW 26.44.030(1)(a). (*See id.* at 62.)

As to the alleged procedural violations of SPS policy, which the court construes as allegations regarding the SPS Defendants' breach of their duty to non-negligently investigate abuse, Ms. Strange does not allege any facts supporting an inference that she was injured by these deviations from SPS Policy. Indeed, it seems implausible that, given the SPS Defendants' concern that Mr. Grae-El punched A.S. in the stomach, events would have unfolded differently had someone other than Ms. Long made the initial report to DCYF, obtained written consent from A.S. before inquiring about the possible abuse, or allowed Plaintiffs to join those conversations.

Nor does Ms. Strange establish that the SPS Defendants breached any duty to non-negligently report suspected abuse. To begin, the court need not accept as true Ms. Strange's conclusory assertions that "[A.S.] did not have valid indicators aligned with requirements to report abuse" under SPS Policy No. 3421 or that "reasonable cause" did not exist to report abuse. *Iqbal*, 556 U.S. at 678. Indeed, that assertion is undercut by Ms. Strange's allegation that SPS staff were acting on A.S. telling them he had been punched in the stomach by Mr. Grae-El (Compl. at 11), which she concedes is a valid indicator of abuse (*see id.* at 63 ("[A.S.] met one if not none of the indicators of abuse according to SPS policy.").) Thus, even accepting as true that SPS staff did not observe bruising on A.S.'s stomach and that A.S. did not express a fear of returning home (*see id.*

1  at 63), the court cannot conclude that the SPS Defendants acted negligently by reporting

2  the suspected abuse to DCYF or allowing DCYF and SPD to interview the children at

3  Dunlap Elementary on November 29, 2018.  To the contrary, SPS employees may have

4  faced significant liability by failing to alert DCYF to their concerns.  *See* RCW 26.44.080

5  (establishing that anyone required by RCW 26.44.030 to report child abuse "who

6  knowingly fails to make, or fails to cause to be made, such report, shall be guilty of a

7  gross misdemeanor").

8          2.      <u>Pre-Suit Notice Requirement</u>

9          Even if Ms. Strange had alleged facts sufficient to state a claim for the negligent

10 investigation or report of child abuse by the SPS Defendants, she would still be

11 prohibited from pursuing damages against SPS.  Actions for damages can be brought

12 "against a local government entity" only once "service of a state tort notice is" made.

13 *Ballou v. McElvain*, 14 F.4th 1042, 1058 (9th Cir. 2021) (citing RCW 4.96.020).

14 Specifically, before suing a "local government entity" or its "officers, employees, or

15 volunteers" for money damages, plaintiffs must present notice of their claim to the

16 governmental entity and then wait "sixty calendar days" before filing suit.  *See* RCW

17 4.96.020(4).

18         Although Ms. Strange alleges that she fulfilled her pre-suit notice requirements

19 with respect to the State of Washington defendants (*see* Compl. at 6 (citing RCW

20 4.92.110 *et seq.*)), Ms. Strange does not allege that she provided pre-suit notice to the

21 //

22 //

SPS Defendants. (*See generally id.*[8]) Ms. Strange's tort-based claim for damages against SPS cannot proceed in light of that oversight. *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 111 P.3d 1173, 1180 (Wash. 2005) (affirming summary dismissal of a tort suit where plaintiffs failed to provide the pre-suit notice required by RCW 4.96.020).

### 3. Ms. Long's Immunity from Civil Liability

Ms. Strange's negligence claim against Ms. Long also fails for the additional reason that Ms. Long is immune under state law from liability for her good faith report of suspected child abuse "or otherwise providing information or assistance . . . in connection with a report, investigation, or legal intervention pursuant to a good faith report of child abuse or neglect." RCW 26.44.060.

Here, the conduct Ms. Long is alleged to have engaged in does not suggest an absence of good faith. Indeed, Ms. Strange alleges that Ms. Long misinterpreted evidence and contravened internal SPS policy by reporting possible abuse to DCYF. (*See* Compl. at 11-12, 35, 62-64.) But "there is no legal requirement that information giving rise to a suspicion of child abuse be investigated or verified before it is reported," so "a traditional negligence standard—based on what the reporter reasonably should have known—is not used to determine whether immunity will attach," *see Whaley v. State,*

//

---

[8] This oversight may be due, in part, to Ms. Strange's mistaken belief that "SPS staff are state employees." (Compl. at 55.) The court need not accept legal conclusions contained in the complaint as true, *see Iqbal*, 556 U.S. at 678, and it is clear under Washington law that "[s]chool districts," like SPS, "are municipal or quasi-municipal corporations, *Fed. Way Sch. Dist. No. 210 v. Vinson*, 261 P.3d 145, 150 (Wash. 2011). Accordingly, before suing for negligence, Ms. Strange was obligated to provide the pre-suit notice required by RCW 4.96.020. *See Ballou*, 14 F.4th at 1058.

*Dep't of Soc. & Health Servs.*, 956 P.2d 1100, 1106 (Wash. 1998) (noting that RCW 26.44.060 is intended to "encourag[e] the reporting of child abuse"). Thus, even if Ms. Strange had plausibly alleged that Ms. Long negligently investigated or reported the suspected abuse, she is immune from liability for damages under RCW 26.44.060(1)(a). *See Whaley*, 956 P.2d at 1106; *see also Dunning v. Pacerelli*, 818 P.2d 34, 38 (Wash. Ct. App. 1991) (holding that those who negligently "report[] child abuse" are nevertheless immune from civil liability under RCW 26.44.060 (emphasis omitted)).

Accordingly, the court GRANTS the SPS Defendants' motion to dismiss Ms. Strange's negligence claim.

## IV. CONCLUSION

For the foregoing reasons, the SPS Defendants' motion to dismiss (Dkt. # 15) is GRANTED and Ms. Strange's claims against the SPS Defendants are DISMISSED without prejudice. The court will provide further guidance to Ms. Strange on the deadline for seeking leave to amend these claims in a forthcoming order. (*See* 3/8/33 Order (Dkt. # 61) at 2.)

Dated this 10th day of March, 2022.

JAMES L. ROBART
United States District Judge